## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ANDERSON, B., LABUDDA, S., GRANGER, P. ) <br> GRENDZIAK, S., KEATON, M. ) <br> individually and on behalf of all others ) <br> similarly situated, ) <br> ) <br>        Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> VOLKSWAGEN GROUP OF AMERICA, INC., ) <br> ) <br>       Defendant. ) | Case No.: 15-CV-622 |

## CLASS ACTION COMPLAINT

Plaintiffs, for themselves and on behalf of all others similarly situated, by the undersigned counsel, allege the following against Volkswagen Group of America, Inc. ("Volkswagen"):

1.     Since at least 2009 and until the present Volkswagen has manufactured and sold cars in the United States with diesel engines installed in various model cars, including the Jetta, the Beetle, the Audi A3, the Golf and the Passat models.

2.     The engines in these model cars were falsely and deceptively marketed as a "TDI® clean diesel engine."

3.     The Clean Air Act, 42 U.S.C. §§ 7401-7671q, and its implementing regulations, administered by the Environmental Protection Agency ("EPA"), requires automobile manufacturers to install emission control devices to ensure that each diesel vehicle sold in the U.S. complies with Clean Air Act emission standards during operation, and to certify that such devices have been installed and are operative and that they meet the standards.

4.      As detailed in the Environmental Protection Agency's Notice of Violation ("NOV"), Volkswagen installed software to detect when the vehicle is undergoing an emissions

test (the "Defeat Device") in certain makes and models, including the Jetta, the Jetta Sportwagen, the Golf, the Audi A3, the Beetle, the Beetle Convertible, the Passat, and the Golf Sportwagen to detect when the car was undergoing an emissions test (the "Affected Vehicles").

5.   Volkswagen sold at least 482,000 Affected Vehicles in the U.S. since 2009.

6.   When the software in the Affected Vehicles' Electronic Control Module ("ECM") detects environmental and vehicle parameters that resemble an emissions test, the ECM activates the pollution control devices installed on the car to enable an emissions test to be passed.  Under normal driving conditions, however, the pollution control devices that control emissions from the "TDI® clean diesel engine" are inoperative or greatly impaired.  The result is that the Affected Vehicles routinely emit pollution far in excess of that allowed by the Clean Air Act.

7.   Automobiles equipped with "defeat devices" cannot be certified by the EPA cannot be legally sold in the United States.

8.   The EPA has determined that this Volkswagen's Defeat Device allows between 10 and 40 times the allowed level of nitrous oxide to be emitted from the Affected Vehicles, depending on the type of drive cycle (i.e., city or highway driving). Nitrous oxide is a reactive gas that reacts with volatile organic compounds in the atmosphere to produce ozone on hot summer days which, in turn, is a health hazard, and its emission is regulated by the EPA.

9.   Another result of the Defeat Device is that fuel mileage increases in ways that it would not if the required emission control devices were fully operative.

10.   Volkswagen marketed these diesel cars as containing a "TDI® clean diesel engine." Volkswagen also marketed these diesel cars as "clean" and "green" cars. These were false representations on which Plaintiffs and the public relied, in deciding whether to purchase a diesel engine vehicle.

2

11.     The EPA has ordered Volkswagen to recall the above described vehicles and repair them so that they comply with emissions requirements during normal operation.

12.     Volkswagen will not be able to make the above described vehicles comply with emissions standards without substantially degrading their horsepower and efficiency.

13.     Even if Volkswagen is able to comply with the EPA order, the Named Plaintiffs and putative Class Members will suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and will not perform as advertised. This will result in, among other damages, a diminution in value of every Affected Vehicle and it will cause owners to pay more for fuel while using their vehicles.

14.     Named Plaintiffs and members of the putative class did not receive the "TDI® clean diesel engine" they bargained for due to the false statement and/or fraudulent misrepresentation of Volkswagen. Nor did they received a "green" or "clean" car.

15.     As a result of Volkswagen's unfair, deceptive and/or fraudulent business practices, and its failure to disclose that under normal operating conditions that its diesel engines emitted up to 40 times the allowed emission levels of regulated gasses, owners and/or lessees of the above mentioned model cars have suffered losses in money and/or property and will continue to do so.

## PARTIES

16.     The Defendant, Volkswagen Group of America, Inc., is a New Jersey corporation, with its principal place of business located in Herndon, Virginia. It does business in all 50 states and in the District of Columbia.

17.     Plaintiff Brian Anderson is an adult resident of the State of Wisconsin and resides in the Western District of Wisconsin.  Plaintiff Anderson purchased a 2014 Volkswagen Golf with a "TDI® clean diesel engine" from Volkswagen of Middleton.

3

18.     Plaintiff Peter Granger is an adult resident of the State of Wisconsin and resides in the Western District.  Plaintiff Granger purchased a 2010 Volkswagen Jetta with a "TDI® clean diesel engine" at Frank Boucher Volkswagen of Janesville.

19.     Plaintiff Michelle Keaton is an adult resident of the State of Wisconsin.  Plaintiff Keaton purchased a 2014 Volkswagen Jetta with a "TDI® clean diesel engine" on January 8, 2014 from the Concours Motors Dealership in Milwaukee, WI.

20.     Plaintiff Shayne A. Labudda is an adult resident of the State of Wisconsin and resides in the Western District.  Plaintiff Labudda purchased a 2014 Volkswagen Jetta with a "TDI® clean diesel engine" from Zimbrick Volkswagen in Madison, WI.

21.     Plaintiff Sarah Grendziak is an adult resident of the State of Wisconsin.  Plaintiff Grendziak purchased a 2014 Volkswagen Passat with a "TDI® clean diesel engine" from Broadway Volkswagen in Green Bay, WI.

22.     Plaintiffs unknowingly purchased vehicles equipped with the Defeat Device which caused the vehicles to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including nitrous oxide. Volkswagen's use of the Defeat Device has caused Plaintiffs out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully used the Defeat Device but did not disclose the Device and its effects to Plaintiffs.  Plaintiffs thus purchased their vehicles on the reasonable, but mistaken, belief that they complied with United States emissions standards, were properly EPA certified, and would retain all of their operating characteristics throughout their useful life.

23.     Named Plaintiffs selected and ultimately purchased their vehicles, in part, because of the "TDI® clean diesel engine," as represented through advertisements and representations made by Volkswagen.  None of the advertisements viewed or representations received by Plaintiffs

contained any disclosure relating to the Defeat Device or that Volkswagen had purposefully falsified its certification of EPA compliance. Had Volkswagen disclosed that the "TDI® clean diesel engine" in Plaintiffs' vehicles actually emitted up to 40 times the permitted levels of pollutants, including nitrous oxide, Plaintiffs would not have purchased their Affected Vehicle, or would have much paid less for the vehicle, if it could even have been legally marketed.

## JURISDICTION

24.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists because Plaintiffs and putative Class Members are citizens of a State different from that of the Defendant.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

25.     Venue is proper in this District under 28 US.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this district. Some of the Named Plaintiffs and putative class members reside in this District, and Volkswagen has advertised, marketed, sold and leased the Affected Vehicles within this District.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment Tolling

26.      Volkswagen intentionally designed the Defeat Device, a "sophisticated software algorithm," that detects when the vehicle in undergoing an emissions test.

27.     The defeat device was not discoverable by the Plaintiffs or class. The EPA began investigating emissions problems in certain of the Affected Vehicles in 2014. When the EPA contacted Volkswagen about the issue Volkswagen misled the EPA claiming that the high emissions results were attributable to various technical issues and unexpected in-use conditions.

28.     Plaintiffs and the Class could not have discovered that Volkswagen was concealing its deception or fraud through the exercise of reasonable diligence within any applicable period of limitation.

29.     Nor did Plaintiffs and the Class know, and they could not have learned through the exercise of reasonable diligence, that Volkswagen had misled the EPA and falsely certified the required Certificate of Compliance as to each model of the Affected Vehicles.

30.     Nor did Plaintiffs and the Class know, and they could not have learned through the exercise of reasonable diligence, that Volkswagen had falsely advertised, marketed and warranted the engine system in the vehicles as a "TDI® clean diesel engine" when the fact was that it was an illegally dirty engine.

31.     Any applicable statute of limitation has therefore been tolled by Volkswagen's knowledge, active concealment, and denial of the facts alleged herein.

### Estoppel

32.     Volkswagen was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the vehicles. Volkswagen actively concealed the true character, quality, and nature of the vehicles and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the vehicles. Plaintiffs and Class Members reasonably relied upon Volkswagen's knowing and affirmative misrepresentations and/or active concealment of these facts. Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitation in defense of this action.

### Discovery Rule

33.     The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered that their vehicles had an illegal "defeat device."

34.     However, Plaintiffs and Class Members had no realistic ability to discern that the vehicles were defective until—at the earliest—September 18, 2015 when the EPA Notice of Violation became public.

35.     Therefore, Plaintiffs and Class's causes of action did not accrue until September 18, 2015.

## CLASS ACTION ALLEGATIONS

36.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this class action and seeks certification of the claims and issues on behalf of a Class defined as:

All persons or entities in Wisconsin who purchased or leased the following vehicles containing a "TDI® clean diesel engine."

- 2009 model year VW Jetta and VW Jetta Sportwagen;

- 2010 model year VW Golf, VW Jetta, VW Jetta Sportwagen, and Audi A3;

- 2011 model year VW Golf, VW Jetta, VW Jetta Sportwagen, and Audi A3;

- 2012 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 and VW Passat;

- 2013 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 and VW Passat;

- 2014 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 and VW Passat; and/or

- 2015 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, Audi A3 and VW Passat

7

### Numerosity and Ascertainability

37.     Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. Class Members are readily identifiable from information and records in Volkswagen's possession, custody, or control.

### Typicality

38.     The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class Members, purchased or leased a Volkswagen Affected Vehicle designed, manufactured, marketed and distributed by Defendants. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct. Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

### Adequacy

39.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex class action litigation and claims involving defective automotive products.

40.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

### Commonality

41.     There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members. These common legal and factual issues include:

a.      Whether Defendant designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

b.      Whether the Affected Vehicles contained a Defeat Device designed to allow the vehicle to pass emissions tests but to violate emissions standards at other times;

c.      Whether Defendant concealed the Defeat Device;

d.      Whether the Defendant falsely marketed the Affected Vehicles as "green" or "clean diesels";

e.      Whether any fix attendant on a recall will result in reduced value of the Affected Vehicles;

f.      Whether any fix attendant on a recall will result in higher fuel consumption;

g.      Whether any fix attendant on a recall will reduce the horsepower of the Affected Vehicles;

h.      whether Defendant omitted and failed to disclose material facts about the Affected Vehicles;

i.      Whether Defendant's concealment of the true defective nature of the Affected Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing the Affected Vehicles;

j.      Whether Plaintiffs and the other Class members overpaid for their Affected Vehicles;

k.      Whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability; and

m.      Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

9

42.     Defendants have acted in a uniform manner with respect to the Plaintiffs and Class Members. Each Affected Vehicle is defective in the same way, Defendant misrepresented each Affected Vehicle in the ways described herein, and the Plaintiffs and Class Members are and will be damaged in similar ways.

43.     The claims asserted by Plaintiffs are typical of the claims of the members of the Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each.

44.     The Class is manageable because the Defendants keep records on sale for purposes of issuing recall notices. Identifying Class members and resolving common liability questions will therefore be manageable.

45.     The Plaintiffs will fairly and adequately represent and protect the interest of the class.

46.     Plaintiff and his counsel can fairly and adequately represent the class.

47.     There are no individual questions of liability.

48.     Allowing the prosecution of these claims as separate actions would create the risk the establishment of incompatible standards of conduct being imposed on Defendants; would risk needlessly duplicative results and protracted proceedings; and is inappropriate because common questions of law or fact predominate over questions affecting only individual members of the Class.

## FIRST CLAIM FOR RELIEF

### Breach of Express Warranty

49.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

50.     By advertising the "green" and "clean" qualities of its diesel engines, Defendant expressly warranted to purchasers of the subject vehicles that the vehicles at least complied with all applicable laws and regulations relating to exhaust emissions. Stated differently, it would be

impossible for an automobile to be "green" if it emitted more pollutants than were allowed by applicable environmental laws and regulations.

51.     Such statements became the basis of the bargain for Plaintiffs and other purchasers of the vehicles because such statements are among the facts a reasonable consumer would consider to be material in the purchase of a vehicle.

52.     In fact, in ordinary driving conditions, the subject vehicles did not comply with applicable environmental regulations, emitting between **10** and 40 times the amount of pollutants allowed. As such, it was unlawful for Defendant to sell the vehicles to the public.

53.     In addition, Defendant stated that the vehicles achieved certain a fuel efficiency in terms of miles per gallon of fuel when tested in accordance with applicable EPA regulations. Those statements created an express warranty that, under EPA test conditions, the vehicle achieved the stated fuel efficiency for purposes of making apples-to-apples comparisons with other vehicles.

54.     Testing under EPA regulations presupposes that the vehicles comply with all laws and regulations applicable to automobiles, including environmental regulations.

55.     In fact, had the subject vehicles been tested in accordance with EPA fuel efficiency standards while also complying with pollution regulations, they would have achieved significantly lower fuel efficiency than was stated on the EPA mileage sticker on the vehicle.

56.     As a result of the foregoing breaches of express warranty, Plaintiffs and other members of the Class have been damaged in that they purchased a vehicle that was unlawful to have been sold in the first instance, and, even if lawfully sold, was less valuable than what they paid for the vehicles because the vehicles do not comply with applicable environmental regulations and cost more to operate because, if they are repaired to conform with applicable environmental regulations, they will be less efficient to operate and incur

higher fuel costs.

## SECOND CLAIM FOR RELIEF

### Breach of Implied Warranty of Merchantability

57.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

58.     Section 2-314 of the Uniform Commercial Code provides that, unless disclaimed, there is an implied warranty of merchantability with respect to the goods being purchased.

59.     Among the warranties included within the implied warranty of merchantability is that the goods would pass without objection in the trade under the contract description.

60.     For the reasons set forth above, the subject vehicles would not pass without objection in the trade because the retail sale by the manufacturer of a vehicle that contains a defeat device is unlawful.

61.     As a result of the foregoing breaches of warranty, Plaintiffs and other members of the Class have been damaged in that they purchased a vehicle that was unlawful to have been sold in the first instance, and, even if lawfully sold, was less valuable than what they paid for the vehicles because the vehicles do not comply with applicable environmental regulations and cost more to operate because, if they are repaired to conform with applicable environmental regulations, they will be less efficient to operate and incur higher fuel costs.

## THIRD CLAIM FOR RELIEF

### Magnuson-Moss Act (15 U.S.C. §§ 2301, *et seq.*) — Implied Warranty

62.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

63.     The subject vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

64.     Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

65.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

66.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

67.     Defendant provided Plaintiffs and the other Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendant warranted that the subject vehicles would pass without objection in the trade as designed, manufactured, and marketed, and were adequately labeled.

68.     Defendant breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1).

69.     Any efforts to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

70.     Plaintiffs and the other Class members have had sufficient direct dealings with either Defendant or its agents (dealerships) to establish privity of contract.

71.     Nonetheless, privity is not required here because Plaintiffs and other Class members are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of the implied warranties. The dealers were not intended to be

13

the ultimate consumers of the subject vehicles and have no rights under the warranty agreements provided with the subject vehicles; the warranty agreements were designed for and intended to benefit consumers.

72.     Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give the Vehicle Manufacturer Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

73.     The amount in controversy of Plaintiffs' individual claims meet or exceed the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiff, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

74.     Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1).

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

75.     Plaintiffs repeat the foregoing allegations as if fully set forth herein, and in the alternative to warranty-based claims.

76.     Defendant has been unjustly enriched in that it intentionally sold vehicles with

defeat devices which were intended to mask the fact that the subject vehicles did not comply with applicable automobile exhaust regulations and, in fact, emitted between 10 and 40 times the pollutant allowed by those regulations.

77.     When purchasing their vehicles, Plaintiffs and other Class members reasonably believed that the subject vehicles complied with applicable environmental regulations and, if properly tested in accordance with EPA mileage standards, would achieve for comparison purposes the mileage stated on the window sticker of the vehicles.

78.     Plaintiffs and other Class members got less than what they paid for in that the subject vehicles did not comply with applicable environmental regulations, nor was the EPA mileage stated on the sticker usable for comparison purposes for other vehicles.

79.     The foregoing did not occur by happenstance or conditions out of Defendant's control. In fact, the vehicles were deliberately designed to comply with environmental regulations only when being tested and were known and intended by Defendant to not comply with applicable regulations under ordinary driving conditions.

## FIFTH CLAIM FOR RELIEF

### Violations of Wis. Stat. § 110.18

80.     Named Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

81.     Volkswagen is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

82.     Named Plaintiffs and the putative class members are members of "the public" as defined by Wis. Stat. § 100.18(1). Plaintiffs and the Class purchased or leased one or more Affected Vehicles.

83.     Wis. Stat. § 100.18(1) prohibits a "representation or statement of fact which is untrue, deceptive or misleading."

84.     Volkswagen installed Defeat Devices which enabled Volkswagen to conceal that its CleanDiesel engine systems failed EPA regulations and to misrepresent that its CleanDiesel engine systems did in fact comply with EPA regulation. By so doing, Volkswagen engaged in unlawful trade practices under Wis. Stat. § 100.18(1) by making untrue factual representations as to its CleanDiesel engine systems and by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

85.     Volkswagen has known of its use of the Defeat Device and its CleanDiesel engine system's failure to comply with EPA regulations system for at least six years, but concealed that information from Named Plaintiffs and the putative class members.

86.     Volkswagen knew that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations. Volkswagen concealed this information.

87.     By failing to disclose and by actively concealing the Defeat Device and the true emissions of the CleanDiesel engine system and by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency Volkswagen engaged in deceptive business practices in violation of Wis. Stat. § 100.18(1).

88.     At all times relevant to this case, Volkswagen willfully failed to disclose and actively concealed the use of the Defeat Device and the true emissions of the CleanDiesel engine

systems. Volkswagen repeatedly misrepresented that the Affected Vehicles were safe, reliable, environmentally clean, efficient, and of high quality.

89.     Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Named Plaintiffs and putative class members, about the true emissions of the CleanDiesel engine system, the integrity of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Affected Vehicles.

90.     Volkswagen intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Named Plaintiffs and putative class members.

91.     Volkswagen knew or should have known that its conduct violated Wis. Stat. § 100.18(1).

92.     Volkswagen's representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles and the Volkswagen and Audi brands were untrue, deceptive, and misleading.

93.     Volkswagen owed Named Plaintiffs and putative class members a duty to disclose the true safety, cleanliness, efficiency and reliability of the Affected Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

- Possessed exclusive knowledge of its use of the defeat devices, its valuing profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

- Intentionally concealed the foregoing from Named Plaintiffs and putative class members; and/or

- Made untrue, deceptive and misleading representations about the safety, cleanliness, efficiency and reliability of the Affected Vehicles generally, and the use of the Defeat Device and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

94.     Because Volkswagen fraudulently concealed the Defeat Device and the true cleanliness and performance of the CleanDiesel engine system, resulting in negative publicity following the disclosure of the use of the Defeat Device and true characteristics of the CleanDiesel engine system, the value of the Affected Vehicles has greatly diminished. Because of the stigma attached to those vehicles that is the result Volkswagen's deceptive conduct, they are now worth significantly less than they otherwise would be.

95.     Volkswagen's fraudulent use of the Defeat Device and its concealment of the true characteristics of the CleanDiesel engine system were material to Named Plaintiffs and putative class members. A vehicle made by a reputable manufacturer of environmentally clean vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its cars pollutes rather than make environmentally friendly vehicles.

96.     Named Plaintiffs and putative class members suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

97.     Volkswagen had an ongoing duty to all Volkswagen and Audi customers, including Named Plaintiffs and putative class members, to refrain from unfair and deceptive acts or practices under Wis. Stat. § 100.18(1). Named Plaintiffs and putative class members

suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

98.     Volkswagen' violations present a continuing risk of deception to Named Plaintiffs and putative class members as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

99.     As a direct and proximate result of Volkswagen's violations of Wis. Stat. § 100.18(1), Named Plaintiffs and putative class members have suffered injury-in-fact and/or actual damage.

100.     Named Plaintiffs and putative class members are entitled to damages and other relief provided for under Wis. Stat. § 100.18(11)(b)(2). Because Volkswagen's conduct was committed knowingly and/or intentionally Named Plaintiffs and putative class members are entitled to treble damages.

101.     Plaintiff and the Class also seek court costs and attorneys' fees under Wis. Stat. § 110.18(11)(b)(2).

## SIXTH COUNT FOR RELIEF

### Fraud by Concealment

102.     Named Plaintiffs and putative class members re-allege and incorporate by reference all paragraphs as though fully set forth herein.

103.     Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles. Volkswagen engaged in a concealed scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed to kick-in during

emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. Volkswagen intended for this software to enable vehicles to pass emissions certifications by way of deliberately induced false readings, and this software did in fact do so. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

104.    Named Plaintiffs and putative class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were untrue and misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

105.    Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Named Plaintiffs and putative class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to Named Plaintiffs and putative class members, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Named Plaintiffs and putative class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

106.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Named Plaintiffs and putative class members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Named Plaintiffs and putative class members, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Named Plaintiffs and putative class members. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

107.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to increase and to protect its profits and to avoid the perception that its

vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the Volkswagen's image and cost Volkswagen money, and it did so at the expense of Named Plaintiffs and putative class members.

108.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Named Plaintiffs and putative class members by concealing material information regarding the emission qualities of its Affected Vehicles and its defeat device scheme.

109.   Named Plaintiffs and putative class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Named Plaintiffs and putative class members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

110.   Because of the concealment and/or suppression of the facts, Named Plaintiffs and putative class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Named Plaintiffs and putative class members been aware of Volkswagen's emissions schemes with regard to the Affected Vehicles and Volkswagen's actual failure to comply with applicable federal and state law and regulations, Named Plaintiffs and putative class members who purchased or leased

new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

111.   The value Named Plaintiffs and putative class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

112.   Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

113.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Named Plaintiffs and putative class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. To the extent permitted under applicable law Volkswagen's conduct warrants an assessment of PUNITIVE DAMAGES in an amount sufficient to deter such conduct in the future.

## COUNT III

## BREACH OF CONTRACT

114.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

115.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and the other Wisconsin Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Named Plaintiffs and putative class members would not have purchased or leased

these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Named Plaintiffs and putative class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

116.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Named Plaintiffs and putative class members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

117.    As a direct and proximate result of Volkswagen's breach of contract, Named Plaintiffs and putative class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, PUNITIVE DAMAGES, and other damages allowed by law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs and the members of the Class respectfully request that:

1.      The Court certify this action as a Class action under Federal Rule of Civil Procedure 23(b)(3);

2.      An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

24

3.      That the Plaintiffs and the Class be awarded compensatory damages for the value of the property or property rights that they were wrongfully deprived of;

4.      Costs, restitution, PUNITIVE DAMAGES, and disgorgement in an amount to be determined at trial;

5.      An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

6.      Federal and State statutory remedies and penalties as alleged herein;

7.      That the Plaintiffs be awarded reasonable attorney's fees and costs.

Plaintiff and the Class demand trial by jury.

<u>Dated this 25th Day of September</u>


**HABUSH HABUSH & ROTTIER, S.C.**

*Attorneys for the Plaintiff*

By:      */s/ Daniel A. Rottier*

      Daniel A. Rottier, State Bar No. 1016998
      drottier@habush.com
      Jason Knutson, State Bar No. 1035801
      Email: jknutson@habush.com
      Breanne L. Snapp, State Bar No. 1091474
      Email: bsnapp@habush.com
      150 East Gilman Street, Suite 2000
      Madison, WI 53703


**HAWKS QUINDEL, S.C.**

*Attorneys for the Plaintiff*

By:      */s/ David C. Zoeller*

      David C. Zoeller, State Bar No. 1052017
      Email: dzoeller@hq-law.com
      222 West Washington Avenue, Suite 450

Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: 608/257-0040
Facsimile: 608/256-0236